STATE OF CONNECTICUT *v.* RAYMOND BEAULIEU

HOUSE, C. J., SHAPIRO, LOISELLE, MACDONALD and BOGDANSKI, Js.

Argued March 7—decided April 6, 1973

*Richard W. Tomeo,* special public defender, for the appellant (defendant).

*Richard F. Banbury,* assistant state's attorney, with whom, on the brief, was *John D. LaBelle,* state's attorney, for the appellee (state).

MacDonald, J. The defendant, Raymond Beaulieu, was found guilty by a jury of the crime of breaking and entering with criminal intent in violation of § 53-76. In his appeal from the judgment rendered on the verdict, he has assigned as error (1) the court's refusal to grant two oral motions for a bill of particulars and his motion in arrest of judgment; (2) the court's refusal to replace the public defender representing the defendant with another court-appointed attorney; (3) a ruling on evidence; (4) a portion of the court's charge; (5) the denial of the defendant's motion to set aside the verdict, and (6) the court's failure to find certain facts claimed to have been admitted or undisputed, and its finding of certain facts and conclusions of fact without evidence.

In considering first the several errors claimed with respect to the finding, those which the defendant failed to brief or argue are treated as abandoned; *McTigue* v. *New London Education Assn.,* 164 Conn.

348, 321 A.2d 462; *State* v. *Grayton,* 163 Conn. 104, 109, 302 A.2d 246; and we do not find that he is entitled to any of the corrections which he has pursued.

The following is a statement of facts with respect to which the state offered evidence to prove and which it claimed to have proved. On October 22, 1970, at approximately 4:40 a.m., Officer Clarence W. Heritage of the Manchester police department arrived at the Manchester Country Club in response to a radioed message that the alarm system at that location had been activated. He arrived at the club about one minute after receiving the call and he saw an individual emerging from the barroom window of the clubhouse building. As Heritage approached, this individual dropped an article subsequently identified as the cash tray from the club's cash register and ran into a brush area of the golf course adjacent to a large reservoir. This area of the golf course was illuminated by huge floodlights and Heritage observed that the fleeing individual was about five feet six inches tall and was wearing dark pants and "kind of a blue iron-gray jacket." The brush area into which the individual ran was completely surrounded by open areas of the golf course and by the reservoir. When Heritage chased this individual into the brush area, he heard a small splash, but there were no swimmers in the reservoir. Within minutes other police officers, including Officer Ronald Roberts, arrived, the brush area was sealed off preventing anyone from leaving undetected, and the area was searched. Twenty-five or thirty minutes thereafter, Roberts found the defendant crouched in the brush area beside the reservoir. During that time no one other than police officers and the defendant entered or left the brush area. When

found, the defendant was wearing dark pants and a T-shirt, although the temperature was approximately 30 to 35 degrees, and about 100 to 150 feet from the spot where the defendant was apprehended Heritage found the jacket which had been worn by the individual he had pursued. At daybreak the brush area was again searched and no one was found. In the pocket of the jacket, Heritage found $10.02 in change and two sets of keys. One set of keys was to the interior doors of the clubhouse and had been left the preceding evening by the club bartender in a locked drawer next to the cash register. The other set included a type of key which, according to Heritage, was used to turn burglar alarms off or on and which, according to the defendant's witness Dominic Galizia, was similar to a type used to turn off a burglar alarm. An inspection showed that the window from which the individual had been observed emerging had been "jimmied" and two television sets and some change were missing from the clubhouse. The two television sets were found the same morning outside the clubhouse building.

The defendant pleaded not guilty on January 26, 1971, to an amended information in two counts. The first count accused him of "Breaking and Entering With Criminal Intent," and charged that "at the Town of Manchester, on or about the 22nd day of October, 1970, the . . . [defendant], with intent to commit a crime therein, did break and enter a building in the possession of The Manchester Country Club . . . in violation of Section 53-76 of the General Statutes, Revision of 1969." The second count, later dismissed on the defendant's oral motion, charged the defendant with larceny at the same date and place in violation of § 53-63. On March 12, 1971,

when the case was reached for trial, the defendant, who was then represented by the public defender, personally, orally and for the first time moved for a bill of particulars and, as a consequence, at the suggestion of the court, the state's attorney read into the record a detailed statement of the facts claimed to constitute the crime charged, following which the court observed that "nothing more could be revealed even if I ordered it." Although the court thereafter formally denied the motion, it for all practical purposes informally and orally granted the equally informal, oral and very tardy motion. The defendant's oral motion for a bill of particulars was renewed on March 16, 1971, before the trial judge who, on reviewing the prior proceedings, ordered the trial to proceed without formally denying the motion but, in effect, doing so after again summarizing for the defendant the specific charges against him. A motion in arrest of judgment on the ground of insufficiency of the information was filed on March 19 and was denied April 1, 1971, when judgment was rendered. Since the same issue is raised by the denial of the two motions for a bill of particulars and by the subsequent denial of the motion in arrest of judgment, these two assignments of error are considered together as, indeed, they were in the defendant's brief and argument.

An information is valid and sufficient if it charges the offense for which the accused is being prosecuted by using the name given to the offense by a statute. Practice Book § 493.[1] That procedure was followed

---

[1] "[Practice Book] Sec. 493. CHARGING THE OFFENSE The indictment or information may charge, and is valid and sufficient if it charges, the offense for which the accused is being prosecuted in one or more of the following ways: (a) By using the name given to the offense by the common law or by a statute. (b) By stating so much of the definition of the offense, either in terms of the common

here by employing a form of information outlined in Practice Book § 491 and adheres to a practice which has been held to be constitutional by this court. *State* v. *Whiteside,* 148 Conn. 208, 211, 169 A.2d 260, cert. denied, 368 U.S. 830, 82 S. Ct. 52, 7 L. Ed. 2d 33; *State* v. *Davis,* 141 Conn. 319, 321, 106 A.2d 159. "The charges of the . . . [information] followed substantially the wording of the statute, which embodies all the elements of the crime, and such charges clearly informed the . . . [defendant] of that with which . . . [he was] accused, so as to enable . . .[him] to prepare . . . [his] defense and to plead the judgment in bar of any further prosecutions for the same offense. It is inconceivable to us how the . . . [defendant] could possibly be misled as to the offense with which . . .[he] stood charged. The sufficiency of the . . . [information] is not a question of whether it could have been more definite and certain." *United States* v. *Debrow,* 346 U.S. 374, 377–78, 74 S. Ct. 113, 98 L. Ed. 92. If a defendant is fairly informed of the charges against him so that he may prepare a proper defense, a bill of particulars is unnecessary and may properly be denied. *State* v. *DiBella,* 157 Conn. 330, 339, 254 A.2d 477; *State* v. *Parker,* 114 Conn. 354, 366, 158 A. 797. And the burden rests on the defendant to demonstrate that necessity. *State* v. *DiBella,* supra, 339; *State* v. *Curtis,* 146 Conn. 365, 367, 151 A.2d 336. This defendant certainly was fairly apprised that the criminal intent in the breaking and enter-

law or of the statute defining the offense or in terms of substantially the same meaning, as is sufficient to give the court and the accused notice of what offense is intended to be charged. The indictment or information may refer to a section or subsection of any statute creating the crime charged therein, and in determining the validity or sufficiency of such indictment or information regard shall be had to such reference."

ing charge referred to larceny, not only by the second count charging him with larceny at the same place on the same date, but further by the state's attorney's statement on March 12 and the court's explanation to him on March 16 in the following explicit language: "Well, I can tell you the intent would be to commit a larceny, to steal. That's something for the State to prove. . . . The State will have to prove its part of its case [that] not only did you break and enter the Manchester Country Club, but at the time you did you intended to steal." Nor is there merit to the claim that the location of the crime was not adequately specified because it did not clearly appear which of three buildings on the premises of the Manchester Country Club was broken into. It was obvious from the information read into the record by the state's attorney in advance of the trial ("a window in the lounge of the country club had been pried open"; the "keys were identified as having been taken from the cash drawer of the bar in the country club"), that the building involved was the clubhouse, and not the pro shop or the swimming pool cabana, which were the only other buildings on the premises. "The granting or denying of a bill of particulars is a matter within the discretion of the trial judge, and absent clear abuse of discretion will not constitute reversible error. . . . We find appellant was amply protected in this case and there was no abuse of discretion." *Duncan* v. *United States*, 392 F.2d 539, 541 (9th Cir.), cert. denied, 391 U.S. 935, 88 S. Ct. 1848, 20 L. Ed. 2d 855.

Somewhat related to the foregoing claim of error is the court's refusal to grant the defendant's request to replace his court-appointed attorney, the public defender, with another court-appointed attor-

ney, inasmuch as it appeared that the public defender had disagreed with the defendant over the necessity of obtaining a bill of particulars. The defendant argues that since it was apparent to the court before the trial started that there was disagreement between the defendant and the public defender concerning the motions for a bill of particulars and the "defense of the case," the court should have appointed another attorney to represent him. A careful examination of the record and of the appendix to the defendant's brief related to this claim of error fails to disclose any substantial disagreement over the "defense of the case" other than that pertaining to the necessity of a bill of particulars, previously discussed. Between the date of his arrest on October 22, 1970, and the commencement of his trial on March 16, 1971, the defendant had five months in which to engage private counsel. The public defender represented him when he was put to plea on January 26, 1971, and again on March 12, 1971, when the trial was definitely assigned for March 16, 1971, but at no time did the defendant request to have other counsel until March 16, when, for the first time, just as the trial was commencing, he requested the appointment of other counsel.

In recent years, courts repeatedly have held that the proper administration of justice requires that such last-minute requests for change of counsel, absent some showing of great need, should be refused. As stated by the Circuit Court of Appeals for the Second Circuit in *United States* v. *Llanes,* 374 F.2d 712, 717, cert. denied, 388 U.S. 917, 87 S. Ct. 2132, 18 L. Ed. 2d 1358: "We and other courts of appeals have repeatedly made clear that the right to counsel 'cannot be . . . manipulated so as to obstruct the orderly procedure in the courts or to

interfere with the fair administration of justice.' *United States* v. *Bentvena,* 319 F. 2d 916, 936 (2 Cir.), cert. denied, [sub nom.] *Ormento* v. *United States,* 375 U. S. 940, 84 S. Ct. 345, 11 L. Ed. 2d 271 (1963); *United States* v. *Abbamonte,* 348 F. 2d 700 (2 Cir. 1965), cert. denied, 382 U. S. 982, 86 S. Ct. 557, 15 L. Ed. 2d 472 (1966); *Cleveland* v. *United States,* 116 U. S. App. D. C. 188, 322 F.2d 401 (D. C. Cir.), cert. denied, 375 U. S. 884, 84 S. Ct. 157, 11 L. Ed. 2d 114 (1963); *United States* v. *Burkeen,* 355 F. 2d 241 (6 Cir. 1966), cert. denied, [sub nom. *Matlock* v. *United States*], 384 U. S. 957, 86 S. Ct. 1582, 16 L. Ed. 2d 553 (1966). Judges must be vigilant that requests for appointment of a new attorney on the eve of trial should not become a vehicle for achieving delay." And in language peculiarly applicable to the present case a federal district court stated in *United States ex rel. Jackson* v. *Follette,* 282 F. Sup. 993, 995 (S.D. N.Y.), aff'd, 425 F.2d 257: "The petitioner's first charge that he was denied the right to obtain counsel of his own choice is challenged by the record. It demonstrates he was afforded ample and reasonable time to get a lawyer, however unlikely it was that private counsel would or could be engaged in the light of petitioner's indigent status. The court's duty, when it appeared that defendant was indigent, was to protect his constitutional right to the assistance of counsel. This was done on the defendant's original arraignment. *However, the right to counsel having been observed, it may not be manipulated by the defendant to thwart the orderly processes of the due administration of justice and used as a tactic to delay trial.* A defendant for whom counsel has been appointed because of indigency must accept such counsel absent a *substantial reason* for a sub-

stitution, or unless he makes it clear he intelligently and knowingly waives his right to counsel and desires to undertake his own defense. *A court is not required to dismiss an assigned attorney upon a defendant's mere whimsical demand and certainly not where it is evident that a professed disenchantment with his lawyer is a subterfuge to secure an unwarranted delay in the trial.* Here petitioner presented no adequate ground for the designation of another attorney. On the contrary, the record leaves no room to doubt that petitioner's last-minute request for the discharge of his lawyer, made at the threshold of jury selection . . . was a calculated maneuver to avoid trial. Under all the circumstances, the court was well within its discretion in denying the request for a change of attorney." (Emphasis added.)

It should be noted that when the defendant made his request for new counsel he said "if I go on trial with . . . [the public defender] I will insist on representing my own self" but, in response to the court's inquiry "do you intend to defend yourself" replied, "if . . . [the public defender] stays as counsel, yes." Throughout the trial, the public defender was present to render assistance to the defendant and did so with respect to numerous motions, objections, exceptions, requests to charge, preparation of final argument and all other matters for which the defendant requested his assistance.

It is conceded by the defendant that the general rule enunciated by this court in *State* v. *Reid*, 146 Conn. 227, 235, 149 A.2d 698, that an accused cannot "without reason . . . refuse the services of the public defender and compel the state to engage counsel of his own choice" is in accord with the law in other jurisdictions "and constitutes sound prac-

tice." See also *State* v. *Hudson,* 154 Conn. 631, 637, 228 A.2d 132; *State* v. *Taborsky,* 147 Conn. 194, 201, 158 A.2d 239. "There is no claim that there was any antecedent acquaintance or relationship between the public defender and the defendant, any conflict of interest, or any reason whatsoever why the public defender could not effectively defend the defendant. Quite properly, the defendant has made no attack on the public defender's experience or ability in the defense of persons accused of crime." *State* v. *Reid,* supra, 234. A mere difference of opinion concerning the proper procedure to follow in obtaining information which actually was fully disclosed to the defendant and which had been furnished to the public defender prior to the defendant's motion for a bill of particulars did not appear to the trial court to constitute "any reason whatsoever why the public defender could not effectively defend the defendant" and we cannot find that the court abused its discretion in denying his request. The defendant clearly had the right to defend himself, if he elected to do so. "The constitutional right of an accused in a criminal case to have the assistance of counsel may be waived, if it is waived intelligently, understandingly and in a competent manner. . . . An accused has the burden of showing that he did not intelligently and understandingly waive his right to counsel . . . at least where, as here, the record clearly shows that the accused was offered counsel by the court and rejected the offer." *State* v. *Nash,* 149 Conn. 655, 662, 183 A.2d 275, cert. denied, 371 U.S. 868, 83 S. Ct. 130, 9 L. Ed. 2d 104. And here, to the extent that the defendant did reject the full services of the public defender during trial, "[n]o one can have the slightest doubt that he was aware at all times that he was knowingly and intelligently re-

jecting the aid of counsel." *Nash* v. *Reincke,* 212 F. Sup. 877, 881 (D. Conn.), aff'd, 325 F.2d 310, cert. denied, 377 U.S. 938, 84 S. Ct. 1345, 12 L. Ed. 2d 302. As previously mentioned, the defendant was competently assisted by the public defender throughout the trial and referred to him as "my counsel."

With respect to the closely related attack on the court's finding that "[t]he defendant elected to represent himself because he did not have sufficient funds to retain an attorney of his own choosing," it would be difficult to find more convincing evidence to support this conclusion than the defendant's answer to the trial court's question: "In other words, because you could not from your own funds select a lawyer of your choice, you elected to try to represent yourself?" to which the defendant answered: "Yes." We find no error in the court's refusal to replace the public defender with other court-appointed counsel and find that all proper and necessary safeguards were meticulously taken by the court to see that the defendant's constitutional rights were protected throughout the trial.

We turn next to claimed error in admitting into evidence as a state's exhibit a set of keys found in a pocket of the jacket discovered in the brush area near the place where the defendant was apprehended. As has been mentioned briefly in our discussion of the finding, Officer Heritage, a witness for the state, testified that keys of the type offered were used to turn burglar alarms off or on and a witness for the defendant, Dominic Galizia, testified on cross-examination that they could be used for that purpose. These keys were offered for the purpose of indicating a criminal intent on the part of the individual seen emerging from the window of

the clubhouse. Officer Heritage testified that he was familiar with the use made of such keys through his twelve years of police investigations. The qualification of an expert is a matter of discretion for the trial court. *Oborski* v. *New Haven Gas Co.,* 151 Conn. 274, 280, 197 A.2d 73. The record discloses no abuse of discretion.

The sole error assigned to the court's charge is directed to the paragraph pertaining to the principle of admission by conduct such as flight.[2] "Flight, when unexplained, tends to prove a consciousness of guilt." *State* v. *Mayell,* 163 Conn. 419, 424, 311 A.2d 60; *State* v. *Miller,* 154 Conn. 622, 628, 228 A.2d 136; *State* v. *Ford,* 109 Conn. 490, 496, 146 A. 828. But the defendant claims error in the failure of the court further to charge the jury that the doctrine could be applied only if they first determined that it was the defendant who fled. This claim is without merit since the next three paragraphs of the charge clearly instructed the jury on inferences, circumstantial evidence and proof beyond a reasonable doubt. An individual instruction must, of course, be reviewed in the context of the entire charge; *State* v. *Guthridge,* 164 Conn. 145, 154, 318 A.2d 87; *State* v. *Raffone,* 161 Conn. 117, 127, 285 A.2d 323; *Hanken* v. *Buckley Bros., Inc.,* 159 Conn.

---

[2] The court charged the jury, in relevant part, as follows: "The law of our state generally recognizes a principle known as admission by conduct. Therefore, the conduct of a person in leaving the scene of an incident may be considered in determining his guilt since, if unexplained, it tends to prove a consciousness of guilt. Now, flight or concealment by the accused after a crime has been committed does not create a presumption of guilt. You may consider evidence of flight or concealment, however, as tending to prove the defendant's consciousness of guilt. You are not required to do so. You should consider and weigh evidence of flight or concealment by the accused in connection with all the other evidence in the case and give it such weight as in your sound judgment it is fairly entitled to receive."

438, 441, 442, 270 A.2d 556; *State* v. *Tropiano*, 158 Conn. 412, 433, 262 A.2d 147, cert. denied, 398 U.S. 949, 90 S. Ct. 1866, 26 L. Ed. 2d 288; and on the basis of the court's entire charge it is difficult to see how the jury could associate the principle concerning flight with the defendant unless it first determined, from the evidence, that he was the individual who fled.

The final assignment of error is that the court erred in refusing to grant the defendant's motion to set aside the verdict as against the evidence. A review of the evidence printed in the appendices to the briefs clearly leads to the conclusion that this assignment also is without merit and requires no discussion.

There is no error.

In this opinion the other judges concurred.