******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* ELVIN R. CABALLERO
(AC 37810)

Sheldon, Beach and Pellegrino, Js.

*Argued January 17—officially released April 25, 2017*

(Appeal from Superior Court, judicial district of
Litchfield, Danaher, J.)

*Sean P. Barrett*, assigned counsel, with whom, on
the brief, was *Peter G. Billings*, assigned counsel, for
the appellant (defendant).

*Timothy F. Costello*, assistant state's attorney, with
whom, on the brief, were *David S. Shepack*, state's
attorney, and *David R. Shannon*, senior assistant state's
attorney, for the appellee (state).

*Opinion*

PELLEGRINO, J. The defendant, Elvin R. Caballero, appeals from the judgment of conviction, rendered after a jury trial, of one count of conspiracy to commit larceny in the third degree in violation of General Statutes §§ 53a-48 and 53a-124, one count of larceny in the third degree as an accessory in violation of General Statutes §§ 53a-8 and 53a-124, and nine counts of forgery in the first degree in violation of General Statutes § 53a-138 (a) (1). The defendant contends that the court abused its discretion in failing to grant his motion for a bill of particulars, which left him without adequate notice that he was facing conviction under subdivision (3) of § 53a-124 (a) as to the counts of conspiracy to commit larceny in the third degree and larceny in the third degree as an accessory, and thereby deprived him of his constitutional rights. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On or about April 21, 2011, the defendant traveled to the West Cornwall post office. Upon entering the post office, the defendant asked the only postal clerk working that day, Jenna Bascetta-Brown, if he could fill out an application for a United States passport. Bascetta-Brown left the front desk for approximately fifteen to thirty seconds to retrieve the application. While she was temporarily out of sight, the defendant reached over the counter, opened an unlocked drawer, and removed a block of blank United States Postal Money Orders (money orders). Bascetta-Brown returned with the passport application, but the defendant left the post office without filling out the form.

The defendant later contacted his friend, Jonathan Perez, who lived in New Jersey. Perez, in turn, contacted Emily Guzman, who also resided in New Jersey, and told her that if she would help the defendant "cash some checks," the defendant could pay her money in return. The defendant, Perez, and Guzman inscribed the blank stolen money orders using a home printer to make them look as though they had been processed by the post office. Each money order was imprinted to show a value of $388.

On April 22, 2011, the defendant, Perez, and Guzman traveled from New Jersey to Connecticut in a rental car in order to cash the money orders. They appeared at nine different post office locations throughout the state, including New Haven, Branford, East Haven, Milford, Bridgeport, and West Haven. At each location, Perez filled out the "from" section of the money order using a fake name and address. Guzman wrote the "to" section using her own name and address, and wrote "child support" on the memo line. Guzman then entered the post office, presented the money order and her photo identification, and cashed the money order for the inscribed sum of $388. Afterward, the defendant

kept $300 for himself, and Guzman and Perez alternated keeping the remaining $88 from each cashed money order.

Later that week, Bascetta-Brown noticed that a stack of thirty blank money orders was missing from the West Cornwall post office. She contacted United States Postal Inspector Jason Bourdeau and reported the missing money orders, along with a description of the defendant.[1] Bourdeau was able to trace the unique serial numbers from the money orders through the Federal Reserve Bank check image retrieval database and access images for each missing money order. The images revealed Guzman's name and address, so Bourdeau was able to locate Guzman and interview her in New Jersey. Both Guzman and Bascetta-Brown were able to identify the defendant from a photographic array.

The following procedural history is also relevant to the defendant's appeal. On July 29, 2013, the state filed a short form information charging the defendant with one count of larceny in the second degree in violation of General Statutes § 53a-123 and one count of forgery in the first degree in violation of § 53a-138. On December 18, 2013, the defendant filed a motion for a bill of particulars and a motion requesting the essential facts underlying the charges.[2] He requested, inter alia, that the state provide him with "[a]ll of the offenses [with which] [he] is charged and their statutory citations," "which specific prohibited conduct, in the language of the statute, the defendant is alleged to have committed," and "[t]he alleged act or acts of the defendant which allegedly constitute the commission of the offense or offenses."

On January 17, 2014, the state filed a substitute short form information charging the defendant with one count of conspiracy to commit larceny in the third degree in violation of §§ 53a-48 and 53a-124, one count of larceny in the third degree as an accessory in violation of §§ 53a-8 and 53a-124, and nine counts of forgery in the first degree in violation of § 53a-138 (a) (1). The substitute short form information did not specify which subdivision of § 53a-124 (a) the defendant was being charged with in regard to the charges of conspiracy to commit larceny in the third degree and larceny in the third degree as an accessory.[3]

Upon filing the substitute short form information, the prosecutor made the following statement in open court: "We're reducing the charge to larceny in the third degree, so it's between over $2000 and under $10,000. . . . [The defendant] was charged with larceny in the second degree, he defrauded a public community, he stole thirty—the facts of the case [are] that this started with the theft of thirty money orders that can be worth up to $1000 each. I downgraded that larceny charge to third degree to make this case as quick and efficient

as I can." The defendant then reiterated his request for a bill of particulars, and the court, *Ginocchio, J.*, stated that the motion would be heard on the defendant's next court date.

The defendant's next court appearance was on February 6, 2014, at which time the defendant asked the court, *Danaher, J.*, to address his previously filed motion for a bill of particulars and request for essential facts.[4] The prosecutor stated that he would file a long form information by the following Monday. The court, after noting that the prosecutor would be providing the defendant with a long form information, stated: "I'm not going to grant or deny your motion right now, what I'm going to do is wait and see if that—what you think, after you've seen that, if that answers your questions." The court also advised the defendant that he would have a right to reassert his motion at his next court appearance if he was not satisfied with the long form information.

The state filed a long form information on February 10, 2014, which contained a scrivener's error.[5] It filed an amended long form information on March 7, 2014, to correct that error. The amended long form information charged the defendant with one count of conspiracy to commit larceny in the third degree in violation of §§ 53a-48 and 53a-124, one count of larceny in the third degree as an accessory in violation of §§ 53a-8 and 53a-124, and nine counts of forgery in the first degree in violation of § 53a-138 (a) (1).

The amended long form information did not specify which subdivision of § 53a-124 (a) underlay the charges of conspiracy to commit larceny in the third degree or larceny in the third degree as an accessory. It did, however, disclose the factual allegations that the state sought to prove for each charge. After the state filed the amended long form information, the defendant addressed the court and stated his concerns. He primarily objected to the fact that the long form information did not state "where [the] money was stolen from" and that because the factual allegations regarding the timing of his actions stated "April, 2011" that "it ha[d] no date." The defendant also asked the state to show him "where you get the larceny three—third degree larceny with blank money orders." Judge Danaher noted that the defendant had already raised these issues in his motion for a bill of particulars and his request for essential facts, and stated that the court would rule on his motion.

On March 10, 2014, the trial court, *Danaher, J.*, issued a memorandum of decision in which it addressed several of the defendant's outstanding motions, including his motion for a bill of particulars and request for essential facts. As to those motions, the court stated: "On February 10, 2014, the state filed a long form [information] including, inter alia, the information required by Practice Book § 41-21. No further action on this motion

is required.''

Subsequently, on March 19, 2014, the court, *Danaher*, *J.*, held a pretrial hearing. The court stated that it wanted to confirm under which subsections of the various statutes set forth in the amended long form information the state was proceeding. The court asked the state if it would be proceeding under § 53a-124 (a) (3) on the charge of conspiracy to commit larceny in the third degree, to which the prosecutor responded, "Yes, Your Honor. That is the subsection the state [is] proceeding under.'' The defendant never filed a further motion for a bill of particulars.

The defendant's trial began on May 28, 2014, more than two months after the pretrial hearing held on March 19, 2014. Prior to the commencement of his trial, the court, *Danaher*, *J.*, provided a draft copy of its preliminary jury instructions to the state and the defendant in which the court proposed instructing the jury under subdivision (3) of § 53a-124 (a) on both the charge of conspiracy to commit larceny in the third degree and the charge of larceny in the third degree as an accessory. Neither party objected to the proposed instructions.

At the close of the state's case, the defendant moved for a judgment of acquittal. He argued that the state had failed to prove that the larceny or forgeries had occurred in the Litchfield judicial district, and argued that the theft of blank postal money orders only amounted to larceny in the sixth degree. The defendant conceded, however, that he was "being charged for [a] government instrument'' and asserted that the postal money orders were not government instruments but were, instead, "commercial.'' The court, *Ginocchio*, *J.*, denied the defendant's motion for judgment of acquittal.

Following deliberations, the jury found the defendant guilty on all counts. The court, *Danaher*, *J.*, sentenced the defendant to a total effective sentence of fifteen years incarceration, execution suspended after four years, followed by five years of probation, all of which would be served consecutively to any other state or federal sentences. This appeal followed. Additional facts will be set forth as necessary.

We first set forth the applicable legal principles and standard of review. "A motion for a bill of particulars is addressed to the sound discretion of the trial court. . . . [A]n abuse of discretion in the denial of a motion for a bill of particulars can be premised only upon a clear and specific showing of prejudice to the defense. . . . The defendant has the burden of showing why the additional particulars were necessary to the preparation of his defense . . . .

"The sixth amendment to the United States constitution and article first, § 8, of the Connecticut constitution guarantee a criminal defendant the right to be informed of the nature and cause of the charges against him with

sufficient precision to enable him to meet them at trial. . . . [That] the offense should be described with sufficient definiteness and particularity to apprise the accused of the nature of the charge so he can prepare to meet it at his trial . . . are principles of constitutional law [that] are inveterate and sacrosanct." (Citations omitted; internal quotation marks omitted.) *State* v. *Vumback*, 263 Conn. 215, 221–22, 819 A.2d 250 (2003).

Our Supreme Court has, on numerous occasions, adverted to sources extrinsic to the specific count or information to determine whether the defendant was sufficiently apprised of the offense charged in reviewing the denial of a motion for a bill of particulars. *State* v. *Spigarolo*, 210 Conn. 359, 384, 556 A.2d 112, cert. denied, 493 U.S. 933, 110 S. Ct. 322, 107 L. Ed. 2d 312 (1989); see also *State* v. *Vumback*, supra, 263 Conn. 228; *State* v. *Kyles*, 221 Conn. 643, 654, 607 A.2d 355 (1992). For example, in *State* v. *Beaulieu*, 164 Conn. 620, 624, 325 A.2d 263 (1973), the court permitted the state's attorney, following a motion by the defendant for a bill of particulars, to "read into the record a detailed statement of the facts claimed to constitute the crime charged . . . ." The court then denied the motion for a bill of particulars. Id. On appeal, our Supreme Court reasoned that when "a defendant is fairly informed of the charges against him so that he may prepare a proper defense, a bill of particulars is unnecessary and may properly be denied." Id., 625. The court emphasized that the "information [was] read into the record by the state's attorney in advance of the trial"; id., 626; in determining that the defendant was "fairly apprised" of the precise charges against him. Id., 625. In light of the foregoing, the court concluded that the trial court did not abuse its discretion in denying the defendant's motion. Id., 626.

In the present case, the defendant contends that the court's failure to grant his motion for a bill of particulars caused him to lack constitutionally sufficient notice that he was being charged under subdivision (3) of § 53a-124 on the charges of conspiracy to commit larceny in the third degree and larceny in the third degree as an accessory. As in *Beaulieu*, however, the prosecutor in this case gave the defendant sufficient notice by means of his oral statement on the record at the March 19, 2014 pretrial hearing. The prosecutor affirmed that the state was proceeding under subdivision (3), and the pretrial hearing took place more than two months before the commencement of the defendant's trial. In addition, the defendant failed to renew his motion for a bill of particulars after the state filed the amended long form information on March 7, 2014, and he did not object to the court's proposed jury instructions that were given to him before his trial, which clearly stated that the state needed to prove his guilt beyond a reasonable doubt under subdivision (3) of § 53a-124 (a) for the charges of conspiracy to commit larceny in the third degree and larceny in the third degree as an accessory.

Thus, the defendant was fully apprised of the charges against him prior to the commencement of his trial. If the defendant had believed he was not given sufficient notice of the charges, he could have renewed his motion for a bill of particulars and could have objected to the court's proposed jury instructions before his trial. He failed to make use of either of these procedural safeguards.

Furthermore, the defendant has not demonstrated, as he must, that he was prejudiced by the court's failure to grant his motion for a bill of particulars. "[A] defendant can gain nothing from [the claim that the pleadings are insufficient] without showing that he was in fact prejudiced in his defense on the merits and that substantial injustice was done to him because of the language of the information. . . . To establish prejudice, the defendant must show that the information was *necessary* to his defense, and not merely that the preparation of his defense was made more burdensome or difficult by the failure to provide the information." (Citations omitted; emphasis added; internal quotation marks omitted.) *State* v. *Vumback*, supra, 263 Conn. 227–28.

The defendant claims that the ambiguity in the state's information hindered his ability to prepare his defense because he did not know which subdivision of § 53a-124 (a) the state was proceeding under for the charges of conspiracy to commit larceny in the third degree and larceny in the third degree as an accessory. The defense presented by the defendant at trial, however, centered on the notion that the defendant was not involved in stealing the money orders or cashing the money orders. In addition, the defendant conceded during his argument on his motion for a judgment of acquittal that he was being charged with theft of a public instrument. Accordingly, the resolution of any alleged ambiguity in the charges set forth in the information and proffer by the state was not necessary for the defendant to prepare the defense used at trial. We therefore cannot conclude that the court improperly failed to grant the defendant's motion for a bill of particulars.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] Bascetta-Brown had remembered the defendant's visit to the West Cornwall post office because he had acted suspiciously, and because she had not recognized him, whereas most of her customers at the small, rural post office were regulars whom she knew on a first name basis. She told Bourdeau that the defendant had "silver teeth" and that his visit had left her with a "funny feeling."

[2] The defendant elected to represent himself throughout the trial process. It was not until his sentencing hearing that he was represented by counsel.

[3] General Statutes § 53a-124 (a) provides in relevant part: "A person is guilty of larceny in the third degree when he commits larceny, as defined in section 53a-119, and: (1) The property consists of a motor vehicle, the value of which is ten thousand dollars or less; (2) the value of the property or service exceeds two thousand dollars; (3) the property consists of a public record, writing or instrument kept, held or deposited according to law with or in the keeping of any public office or public servant; or (4) the property consists of a sample, culture, microorganism, specimen, record,

recording, document, drawing or any other article, material, device or substance which constitutes, represents, evidences, reflects or records a secret scientific or technical process, invention or formula or any phase or part thereof. . . ."

[4] The defendant thereafter conceded that both filings were, in substance, requests for a bill of particulars.

[5] The long form information filed on February 10, 2014, mistakenly charged the defendant with conspiracy to commit larceny in the third degree and larceny in the third degree as an accessory under § 53a-123, as opposed to § 53a-124.