******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* MARY E. BAGNASCHI
(AC 39072)

DiPentima, C. J., and Sheldon and Devlin, Js.

*Syllabus*

Convicted of the crime of breach of the peace in the second degree, the
defendant appealed to this court. The defendant, who previously had
been employed by the same entity that employed S, was involved in an
incident at a frozen yogurt shop with S, who was accompanied by R
and his grandchildren. Specifically, S had extended his hand to greet
the defendant, who grasped S's hand and, in a raised voice, used obsceni-
ties in accusing him of having ruined her life. R became alarmed and
one of the children began to cry. The defendant then went to the passen-
ger side window of the car, made an obscene gesture at R and yelled
obscenities at her before S was able to drive to his home. After S had
driven into the driveway of his home, the defendant, who had driven
her vehicle to the bottom of the driveway, lowered her window and
yelled obscenities at S before she drove away. The trial court denied the
defendant's motion to dismiss, in which she alleged that only evidence
of the events at S's home could be considered at trial because the state's
operative information did not include the events at the frozen yogurt
shop, and that her use of profanity toward S from the bottom of the
driveway did not constitute breach of the peace in the second degree.
On appeal, the defendant claimed, inter alia, that the evidence was
insufficient to support her conviction because the state's information
and bill of particulars charged her with breach of the peace only as to
the events at S's residence, and her conduct in shouting profanities from
a distance amounted to constitutionally protected speech. *Held*:

1. The evidence was sufficient to support the defendant's conviction of
   breach of the peace in the second degree:

   a. The defendant could not prevail on her claim that the information
   and bill of particulars limited the scope of the prosecution to the events
   in front of S's house and that the use of the events at the frozen yogurt
   shop constituted a material variance from the allegations in the operative
   information and bill of particulars, she having failed to sustain her
   burden of establishing prejudicial surprise as a result of the information
   and bill of particulars; the defendant's lack of notice claim regarding
   the events at the frozen yogurt shop failed, as the defendant's motion
   to dismiss the charges specifically referred to her conduct at the frozen
   yogurt shop, the prosecutor, during oral argument on the motion to
   dismiss, emphasized the events at the frozen yogurt shop, including the
   physical contact between the defendant and S, as did defense counsel,
   the defendant failed to object to or to claim that the evidence presented
   by the state regarding her actions at the frozen yogurt shop was outside
   the scope of the state's pleadings, and the defendant did not demonstrate
   that she was prejudiced as a result of the alleged material variance
   between the state's pleadings and the proof at trial.

   b. The evidence concerning the defendant's actions outside the frozen
   yogurt shop and at S's house was sufficient to support her conviction
   of breach of the peace in the second degree; the trial court properly
   considered the defendant's conduct in determining whether the evidence
   supported her conviction of breach of the peace in the second degree,
   as the events at the frozen yogurt shop, coupled with the defendant's later
   appearance and actions outside S's residence, constituted a continuing
   course of conduct from which the jury reasonably could have found
   that the defendant, with the intent to cause inconvenience, annoyance or
   alarm, or having recklessly created a risk thereof, engaged in threatening
   behavior in a public place.

2. The defendant's claim that the trial court improperly denied her motion
   for a probable cause hearing was unavailing; that claim was not made
   before the trial court and was unsupported by any discussion of or
   citation to persuasive legal authority, and the defendant conceded that
   there was no statutory right to a probable cause hearing for a misde-
   meanor such as breach of the peace in the second degree.

3. The defendant could not prevail on her claim that her warrantless arrest in her home was unlawful and, thus, that the subsequent prosecution and her conviction violated her constitutional rights, as an illegal arrest, under controlling legal precedent, does not bar a subsequent prosecution or void a resulting conviction.

4. The trial court did not violate the defendant's constitutional right to present a defense when it ruled that evidence pertaining to complaints that she had filed against her former employer and grievances filed against S were irrelevant and, thus, inadmissible; the defendant failed to proffer evidence that connected S to the alleged acts by the employer that she claimed were in retaliation for her whistle-blowing activities, and there was no evidence that the employer had directed S to pursue his criminal complaint against the defendant as retaliation for her complaints against the employer.

5. The defendant could not prevail on her unpreserved claim that the trial court committed plain error when it failed to recuse itself, which was based on her assertion that the court's preclusion of certain witnesses and evidence demonstrated bias against her that amounted to structural error and necessitated a new trial; the defendant's claims of judicial bias did not constitute plain error, as they amounted to disagreements with the court's rulings, which are not evidence of bias.

Argued November 15, 2017—officially released April 10, 2018

*Procedural History*

Substitute information charging the defendant with the crimes of breach of the peace in the second degree and interfering with an officer, brought to the Superior Court in the judicial district of Waterbury, geographical area number four, where the court, *K. Murphy, J.*, denied the defendant's motion to dismiss; thereafter, the matter was tried to the jury; subsequently, the court denied the defendant's motion to dismiss or for a judgment of acquittal; verdict and judgment of guilty of breach of the peace in the second degree; thereafter, the court dismissed the charge of interfering with an officer, and the defendant appealed to this court. *Affirmed.*

*Deborah G. Stevenson*, assigned counsel, for the appellant (defendant).

*Timothy F. Costello* assistant state's attorney, with whom, on the brief, were *Maureen Platt*, state's attorney, and *John J. Davenport*, senior assistant state's attorney, for the appellee (state).

*Opinion*

DiPENTIMA, C. J. The defendant, Mary E. Bagnaschi, appeals from the judgment of conviction, rendered after a jury trial, of breach of the peace in the second degree in violation of General Statutes § 53a-181 (a) (1). On appeal, the defendant claims that (1) there was insufficient evidence to support her conviction, (2) the trial court improperly denied her request for a probable cause hearing, (3) the court improperly denied her motion to dismiss, which was based on her assertion that she was unlawfully arrested in her home without a warrant, (4) the court improperly violated her constitutional right to present a defense and (5) the court improperly failed to recuse itself. We disagree and, accordingly, affirm the judgment.

The jury reasonably could have found the following facts. On May 16, 2013, John Silano took Jessica Rich, whom he considered to be his "daughter," and Rich's children, whom he considered to be his "grandchildren," to a frozen yogurt shop in Torrington.[1] As Silano, a longtime employee of the Torrington Housing Authority (authority), assisted the older grandchild into the car, he observed the defendant standing approximately twelve to fifteen feet away. Silano knew the defendant because she was a former employee of the authority.

Silano stopped buckling his grandchild into her car seat as the defendant approached. Silano extended his hand to greet the defendant, who inquired as to Silano's well-being. Silano responded that he was "doing fine" and asked how the defendant was. She responded, "I'm not doing well at all, the [authority] ruined my life, you ruined my life." At this point, the defendant, still grasping Silano's hand, stated with a raised voice: "[W]ell, fuck you, John, you ruined my fucking life, fuck you." Rich was "extremely alarmed" by the defendant's actions.

Rich loudly instructed Silano to get into the car as he attempted to extricate himself from the defendant's grasp. The volume of the defendant's voice caused the older grandchild to become upset and to cry. Silano freed himself from the defendant's grip. The defendant then proceeded to the passenger's side window, held up both middle fingers and yelled, "fuck you, fuck you," at Rich. Silano then entered the car and drove away as the defendant continued yelling.

Silano travelled to his home and, after pulling into the driveway, the two adults began taking the grandchildren out of the car. The defendant drove her vehicle to the bottom of the driveway, lowered her window and again yelled at Silano. Specifically, she shouted: "[F]uck you, John, fuck you, look at me, call the police. I want a complete investigation of this." Silano and Rich took the grandchildren into the home and locked the door. The defendant remained for fifteen to thirty seconds

before driving away.

Silano called the police, and James Delay, a Torrington police officer, responded to Silano's home. After speaking to Delay about the incidents at the yogurt shop and his home, Silano indicated that he wanted to file a criminal complaint. Delay obtained a sworn, written statement from Silano. Delay then went to the defendant's residence to "get her side of the story" and to arrest her, having determined that there was probable cause to do so.

The defendant subsequently was charged with breach of the peace in the second degree and interfering with a police officer. Following a trial, the jury found the defendant guilty of breach of the peace in the second degree but not guilty of interfering with a police officer. The court rendered judgment in accordance with the jury's verdict and sentenced the defendant to six months incarceration, execution suspended, and two years of probation.[2] This appeal followed. Additional facts will be set forth as necessary.

I

The defendant first claims that there was insufficient evidence to support her conviction.[3] This claim includes two distinct, yet related components. First, the defendant argues that state's information and bill of particulars charged her with breach of the peace only as to the events at Silano's residence, where there was no physical contact between her and Silano. She further contends that shouting profanities from a distance amounted to constitutionally protected speech and did not rise to the level of "fighting words,"[4] and therefore that the evidence was insufficient to convict her of breach of the peace in the second degree. Second, the defendant argues that even if the state's charging documents included the events at the frozen yogurt shop, the evidence was insufficient to support her conviction. We disagree.

As a preliminary matter, we set forth our well established standard of review. "In reviewing the sufficiency of the evidence to support a criminal conviction we apply a two-part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [finder of fact] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . .

"We note that the jury must find every element proven beyond a reasonable doubt in order to find the defendant guilty of the charged offense, [but] each of the basic and inferred facts underlying those conclusions need not be proved beyond a reasonable doubt. . . . If it is reasonable and logical for the jury to conclude that a basic fact or an inferred fact is true, the jury is

permitted to consider the fact proven and may consider it in combination with other proven facts in determining whether the cumulative effect of all the evidence proves the defendant guilty of all the elements of the crime charged beyond a reasonable doubt. . . .

"Moreover, it does not diminish the probative force of the evidence that it consists, in whole or in part, of evidence that is circumstantial rather than direct. . . . It is not one fact, but the cumulative impact of a multitude of facts which establishes guilt in a case involving substantial circumstantial evidence. . . . In evaluating evidence, the [finder] of fact is not required to accept as dispositive those inferences that are consistent with the defendant's innocence. . . . The [finder of fact] may draw whatever inferences from the evidence or facts established by the evidence it deems to be reasonable and logical. . . .

"Finally, [a]s we have often noted, proof beyond a reasonable doubt does not mean proof beyond all possible doubt . . . nor does proof beyond a reasonable doubt require acceptance of every hypothesis of innocence posed by the defendant that, had it been found credible by the [finder of fact], would have resulted in an acquittal. . . . On appeal, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the [finder of fact's] verdict of guilty." (Internal quotation marks omitted.) *State* v. *Crespo*, 317 Conn. 1, 16–17, 115 A.3d 447 (2015); *State* v. *Gill*, 178 Conn. App. 43, 47–48, 173 A.3d 998, cert. denied, 327 Conn. 987, 175 A.3d 44 (2017).

Next, we identify the elements the state must prove beyond a reasonable doubt to convict an individual of breach of the peace in the second degree. Section 53a-181 (a) provides in relevant part: "A person is guilty of breach of the peace in the second degree when, with intent to cause inconvenience, annoyance or alarm, or recklessly creating a risk thereof, such person . . . (1) Engages in fighting or in violent, tumultuous or threatening behavior in a public place . . . . For purposes of this section, 'public place' means any area that is used or held out for use by the public whether owned or operated by public or private interests."

### A

We first consider the defendant's contention that the state's information and bill of particulars limited the scope of the prosecution to the events in front of Silano's home. Put another way, the defendant argues that the use of the events at the frozen yogurt shop constituted a material variance from the allegations in the operative information and bill of particulars. See, e.g., *State* v. *Pettway*, 39 Conn. App. 63, 80, 664 A.2d 1125, cert. denied, 235 Conn. 921, 665 A.2d 908 (1995).

We conclude that the defendant failed to sustain her burden of establishing prejudicial surprise as a result of the state's information and bill of particulars.

The following additional facts are necessary for our discussion. In its initial short form information, the state charged the defendant with committing the offenses of breach of the peace in the second degree in violation of § 53a-181 and interfering with a police officer in violation of General Statutes § 53a-167a on or about May 16, 2013. On February 11, 2015, the defendant filed a motion for a bill of particulars.[5]

Nearly one year later, on January 7, 2016, the state filed its bill of particulars. It provides in relevant part: "1. The defendant is charged with one count each of Breach of Peace in the Second Degree [in] violation of . . . § 53a-181 (a) (1) and one count of Interfering with an Officer in violation of . . . § 53a-167a. 2. The two charges occurred at or about May 16, 2013, at or about 8:15 p.m. The Breach of Peace Second Degree occurred at or near 260 Crestwood Road, Torrington, Connecticut . . . . 3. As it relates to the Breach of Peace in the Second Degree count; the defendant recklessly created a risk of inconvenience, annoyance or alarm towards John Silano in a public place. . . . 4. See #3 above. 5. See #2 above. 6. The names and addresses of all potential witnesses [have] been disclosed to the defendant in a separate pleading." On the same day, the state filed a long form substitute information essentially tracking the language set forth in its bill of particulars.

The state subsequently filed an amended substitute information and a second amended substitute information on January 11, 2016, and January 12, 2016, respectively. The second amended substitute information charged the defendant, in relevant part, as follows: "That the said [defendant] did commit the crime of Breach of Peace in the Second Degree in violation of . . . § 53a-181 (a) (1), in that on or about May 16, 2013, at or about 8:15 p.m., at or near 260 Crestwood Road, Torrington, Connecticut, the said [defendant], recklessly created a risk of inconvenience, annoyance and alarm towards John Silano by engaging in violent, tumultuous and threatening behavior in a public place."

Contemporaneous with the state's filings, the defendant moved to dismiss the charges on January 11, 2016. Specifically, she asserted that there was insufficient evidence "to justify the bringing or continuing of such information or the placing of the defendant on trial." In the fact section of her supporting memorandum of law, the defendant recited the events of May 16, 2013, beginning at the frozen yogurt shop.

Prior to the start of jury selection, the court, *K. Murphy, J.*, heard argument on the defendant's motion to dismiss. At the outset of his presentation, defense counsel stated: "With regard to the breach of the peace

charge, the allegation is that [the defendant] shook hands with the alleged victim, Mr. Silano, and stated that he had ruined her life. And then she used some language, that I care not to repeat on the record, but it was obscene language to Mr. Silano. And the allegation is, according to the police record, and according to Mr. Silano's statement, that she used that same phrase multiple times. . . . *So, the evidence at a trial before a jury would fairly be the same; it would be that she shook hands with Mr. Silano, that she used foul language to Mr. Silano . . . . [T]hat, in and of itself, I would submit to the court, does not amount to a breach of the peace under the statute.*" (Emphasis added.) Defense counsel also argued that the words used by the defendant on May 16, 2013, did not qualify as "inconvenience, annoyance or alarm with respect to the breach of the peace."

In response, the prosecutor explained that the language used by the defendant constituted fighting words. Additionally the prosecutor argued: "But also if you look at the case law . . . *it's not only the fighting words, but it's the physical contact, the refusal to let go of the handshake,* and the other facts that arise around it between—by the fact that the family members, including young children, were present and the frightening behavior that caused annoyance and alarm to the people who were responsible for the care of those children." (Emphasis added.) The prosecutor subsequently emphasized the significance of the physical contact, which occurred only at the frozen yogurt shop. The court heard a brief response from the defendant's attorney and summarily denied the motion to dismiss.[6]

Evidence commenced on January 14, 2016. The state presented Silano and Rich as witnesses. Both testified regarding the defendant's conduct outside of the frozen yogurt shop without objection from the defendant's counsel. Following their testimony, and that of the police officers, the state rested.

Defense counsel orally moved to dismiss both counts of the information, claiming insufficient evidence.[7] Then, for the first time, defense counsel argued that the operative information did not include the events at the frozen yogurt shop, and therefore that only evidence of the events at Silano's home could be considered.[8] Defense counsel further contended that the defendant's use of profanity toward Silano from the bottom of the driveway did not constitute the crime of breach of the peace in the second degree.

In response, the prosecutor countered that the date and time set forth in the operative information did not constitute elements of the crime of breach of the peace in the second degree; instead, it provided notice to the defendant. The prosecutor continued: "[T]he defendant was well on notice. And we know that, if you look at his pleadings, because in his motion to dismiss he lays

out the entire factual basis of the entire state's case. The defense was entirely aware [of] this conduct while the police took the statement, and that some of the incidents happened at Mr. Silano's house, that the conduct alleged in this was the continued course of conduct from outside of the yogurt shop all the way up to Mr. Silano's house. And that testimony here was entirely consistent with the entire course of conduct from outside the yogurt store all the way up to the house that was occupied by Mr. Silano."

The prosecutor also emphasized that the present case was about the defendant's conduct and that it was "not a first amendment case." Returning to the issue of notice, the prosecutor argued that "the conduct here alleged is the conduct that began outside the yogurt shop and ended at the house. The defense knew that. They had that in the bill of particulars. They had that in their information. They had that in their police reports. They put in their pleadings. They were not surprised or disadvantaged. And it is not an element of the crime."

The court denied the defendant's motion to dismiss. In rejecting the defendant's claim of protected speech, the court observed: "I will indicate that both sides focus on these—both sides refer to as fighting words. I don't think this is a case about fighting words at all. This is a case about conduct. This is a case about grabbing hold of an individual and holding them and not letting go, and then chasing them around the car, then thrusting both hands with the F-you sign in an extremely violent fashion. . . . The words are certainly important, because they show [the defendant's] actions here, but according to the evidence—but the words are—the case is about words, this case is about actions. So, I think the focus on the fighting words language, I really don't think it appropriate in this case."

The court then addressed the scope of the operative information. It reasoned that the information used the phrase, "at or near," and that there was evidence that Silano's home was within "a couple of miles" of the frozen yogurt shop. The court also noted that the defendant had failed to object to the evidence regarding the events at the frozen yogurt shop. The court further stated: "And it appears that it always was anticipated that that was going to be evidence in this case. And I did note the same thing, that in the defense's motion to dismiss, the facts that occurred in front of the yogurt store there, the location of the yogurt store is there . . . ."

Having set forth the facts relevant to this issue, we next identify the applicable legal principles. "The function of an accusatory pleading such as an information is to inform a defendant of the nature and cause of the accusation as required by our federal and state constitutions." (Internal quotation marks omitted.) *State* v. *David N.J.*, 301 Conn. 122, 158, 19 A.3d 646

(2011). "The sixth amendment to the United States constitution and article first, § 8, of the Connecticut constitution guarantee a criminal defendant the right to be informed of the nature and cause of the charges against him with sufficient precision to enable him to meet them at trial. . . . [That] the offense should be described with sufficient definiteness and particularity to apprise the accused of the nature of the charge so he can prepare to meet it at his trial . . . are principles of constitutional law [that] are inveterate and sacrosanct." (Internal quotation marks omitted.) *State* v. *Caballero*, 172 Conn. App. 556, 564, 160 A.3d 1103, cert. denied, 326 Conn. 903, 162 A.3d 725 (2017); see also *State* v. *Bergin*, 214 Conn. 657, 674, 574 A.2d 164 (1990).

A bill of particulars, which is to be read not in isolation but rather with the information, provides the defendant with additional information regarding the state's accusations. *State* v. *Roque*, 190 Conn. 143, 154, 460 A.2d 26 (1983). Our Supreme Court has instructed that "[i]f we consider the bill of particulars in conjunction with the information, the test to be applied is as follows: [If] the state's pleadings . . . informed the defendant of the charge against him with sufficient precision to enable him to prepare his defense and to avoid prejudicial surprise, and were definite enough to enable him to plead his acquittal or conviction in bar of any future prosecution for the same offense, they have performed their constitutional duty." (Internal quotation marks omitted.) Id.; *State* v. *Morrill*, 197 Conn. 507, 551, 498 A.2d 76 (1985); *State* v. *Killenger*, 193 Conn. 48, 55, 475 A.2d 276 (1984); see also *State* v. *Steve*, 208 Conn. 38, 44, 544 A.2d 1179 (1988) (purpose of bill of particulars is to inform defendant, with sufficient precision, of charges against him to prepare defense and avoid prejudicial surprise).

In the present case, the defendant's lack of notice claim regarding the events at the frozen yogurt shop fails in light of defense counsel's arguments in the pretrial motion to dismiss. That motion specifically referred to the defendant's conduct at the frozen yogurt shop as part of the factual basis of the breach of the peace charge. Furthermore, at oral argument on this motion, the prosecutor emphasized the events at the frozen yogurt shop, including the physical contact between the defendant and Silano, as did defense counsel. These facts undermine any claim of surprise.

Additionally, we note that the defendant failed to object to the evidence presented by the state regarding her actions at the frozen yogurt shop. The defendant did not claim that such evidence was outside the scope of the state's pleadings, which also undercuts her appellate claim. See *State* v. *Roque*, supra, 190 Conn. 155–56; *State* v. *Trujillo*, 12 Conn. App. 320, 326, 531 A.2d 142, cert. denied, 205 Conn. 812, 532 A.2d 588 (1987).

Finally, we note that the defendant's appellate brief

fails to analyze the issue of prejudice. "[A] defendant can gain nothing from [the claim that the state's charging documents are insufficient] without showing that he was in fact prejudiced in his defense on the merits and that substantial injustice was done to him because of the language of the information. . . . To establish prejudice, the defendant must show that the information was *necessary* to his defense, and not merely that the preparation of his defense was made more burdensome or difficult by the failure to provide the information." (Emphasis added; internal quotation marks omitted.) *State* v. *Caballero*, supra, 172 Conn. App. 566; *State* v. *Shenkman*, 154 Conn. App. 45, 65, 104 A.3d 780 (2014), cert. denied, 315 Conn. 921, 107 A.3d 959 (2015); see also *State* v. *Vumback*, 263 Conn. 215, 227–28, 819 A.2d 250 (2003).

In her brief, the defendant argues that the trial court, "without authority and in abuse of its discretion, improperly expanded the information, without amendment by the state, to include the alleged conduct of the defendant at both locations." She further contends that in doing so, the court employed an incorrect standard of review with respect to its consideration of the January 14, 2016 motion to dismiss and/or for a judgment of acquittal. This argument, however, ignores the well established obligation for the defendant to show prejudice. The defendant bears the burden on appeal of demonstrating prejudice as a result of a material variance between the state's pleadings and the proof at trial. *State* v. *Stephen G.*, 113 Conn. App. 682, 694–95, 967 A.2d 586 (2009). The defendant has failed to do so and, thus, her claim must fail.

B

We next consider the defendant's claim that the evidence concerning her actions outside of the frozen yogurt shop and outside of Silano's home was insufficient to prove that she violated § 53a-181 (a) (1). Specifically, the defendant argues that the court improperly considered this to be a prosecution based on conduct, rather than on her speech, and that the evidence was insufficient to prove beyond a reasonable doubt that she acted in a violent, tumultuous or threatening manner outside the frozen yogurt shop. The state counters that "physical conduct augmented by speech does not implicate the first amendment . . . [and that] the defendant's physical conduct here—gripping Silano's hand while spewing vulgarities at him—constituted violent, tumultuous, or threatening behavior." We agree with the state.[9]

As we have noted previously, a valid conviction for breach of the peace in the second degree requires the state to "prove that (1) the defendant engaged in fighting or in violent, tumultuous or threatening behavior, (2) this conduct occurred in a public place and (3) the defendant acted with the intent to cause inconvenience,

annoyance or alarm, or that he recklessly created a risk thereof." *State* v. *Ragin*, 106 Conn. App. 445, 451, 942 A.2d 489, cert. denied, 287 Conn. 905, 950 A.2d 1282 (2008). "[T]he predominant intent [in a breach of the peace charge] is to cause what a reasonable person operating under contemporary community standards would consider a disturbance to or impediment of a lawful activity, a deep feeling of vexation or provocation, or a feeling of anxiety prompted by threatened danger or harm." *State* v. *Wolff*, 237 Conn. 633, 670, 678 A.2d 1369 (1996).

We first consider whether the court properly concluded that this prosecution was based on the defendant's physical conduct and, thus, outside of the shield of constitutional protections afforded to protected speech. See, e.g., *State* v. *Weber*, 6 Conn. App. 407, 414, 505 A.2d 1266, cert. denied, 199 Conn. 810, 508 A.2d 771 (1986). The defendant argues that the court improperly failed to consider the "fighting words" doctrine in deciding her motion to dismiss and for a judgment of acquittal filed after the state had rested. We disagree. In *State* v. *Andriulaitis*, 169 Conn. App. 286, 288, 150 A.3d 720 (2016), the defendant argued that the evidence was insufficient to sustain his conviction of disorderly conduct in violation of General Statutes § 53a-182.[10] We noted there that the fighting words doctrine applies when a statute proscribes only speech. Id., 299. For that reason, we determined that "we need not decide whether the defendant's language portended physical violence or amounted to fighting words because the defendant's conduct consisted of more than mere speech. In addition to shouting profanities and that he did not want [his daughter] to enter the residence, the defendant stood in the entrance hallway near the door, and, through that conduct, prevented [her] from engaging in the admittedly lawful activity of entering [the residence] to retrieve her personal possessions. The fighting words limitation, therefore, is not implicated here." (Footnote omitted.) Id., 299–300; see also *State* v. *Simmons*, 86 Conn. App. 381, 389, 861 A.2d 537 (2004) (conviction based on defendant's conduct and not his speech), cert. denied, 273 Conn. 923, 871 A.2d 1033, cert. denied, 546 U.S. 822, 126 S. Ct. 356, 163 L. Ed. 2d 64 (2005); see generally *State* v. *DeLoreto*, 265 Conn. 145, 170–71, 827 A.2d 671 (2003) (*Katz, J.*, concurring and dissenting) (majority's analysis should have focused on defendant's conduct, not "true threats" exception to speech protected under first amendment and noting that nonverbal expressive activity can be banned because of action it entails but not because of ideas it expresses); *State* v. *Szymkiewicz*, 237 Conn. 613, 620, 678 A.2d 473 (1996) (speech may be proscribed under disorderly conduct statute [1] when accompanied by actual physical conduct or [2] when identified as fighting words that portend imminent physical violence). In accordance with the foregoing precedent, we

conclude that the trial court properly considered the defendant's conduct in determining whether the evidence supported her conviction of breach of the peace in the second degree.

The state presented evidence that Silano encountered the defendant as he left the frozen yogurt shop with Rich and his grandchildren. After exchanging an initial pleasantry and a handshake, the defendant's demeanor changed. She stated that both the authority and Silano had ruined her life and then directed a profanity at Silano. The defendant grabbed his hand tightly and would not let go of it. Silano became alarmed by the defendant's "intensity" as she held onto his hand. After Silano freed himself from the defendant's grasp, she went over to the passenger's side of the vehicle where Rich was located, and continued to use profanity. Silano was "very alarmed" for both himself and his family by the defendant's conduct, demeanor and language at the yogurt shop.[11] These events, coupled with the defendant's later appearance and actions outside of Silano's residence, constituted a continuing course of conduct according to the state's theory of the case.[12] The jury reasonably could have found that the defendant, with the intent to cause inconvenience, annoyance or alarm, or recklessly creating a risk thereof, engaged in threatening behavior in a public place. See, e.g., *State* v. *Lo Sacco*, 12 Conn. App. 481, 489, 531 A.2d 184 (sufficient evidence to convict defendant of creating public disturbance, which is similar to breach of peace, where defendant, who had been drinking alcohol heavily and was excitable, angry and upset, went to car, put hands on window, leaned head into car, and yelled at victim for approximately two minutes despite requests to stop), cert. denied, 205 Conn. 814, 533 A.2d 568 (1987). We conclude, therefore, that the state satisfied its burden of proving that the defendant committed breach of the peace in the second degree, and thus that her claim of insufficient evidence must fail.

II

The defendant next claims that the court improperly denied her motion for a probable cause hearing. Specifically, she argues that she was subjected to a warrantless arrest in her home and that a subsequent determination of probable cause never was made by a judge of the Superior Court. She further contends that it was improper for the court to deny her a probable cause hearing. We disagree with the defendant.

On August 24, 2014, at a pretrial proceeding before the court, *Fasano, J.*, the defendant orally requested a probable cause hearing. The court responded that the existence of probable cause had been determined at a prior proceeding. The defendant countered that she had "never had a probable cause hearing." The court then stated: "Well, here's the problem. There's a statutory right to a probable cause hearing for homicides because

there's an exposure to life in prison . . . . They have a right to a probable cause hearing. There's no separate right to a probable cause hearing, particularly on misdemeanors." After the prosecutor voiced his objection, the court denied the defendant's motion, stating, "[i]t's not the practice in Connecticut."

On appeal, the defendant concedes that there is no statutory right to a probable cause hearing for a misdemeanor such as breach of the peace in the second degree.[13] See, e.g., *Edwards* v. *Commissioner of Correction*, 105 Conn. App. 124, 130, 936 A.2d 716 (2008) (where state filed substitute information charging defendant with class D felony, and thus he no longer faced life sentence, he was no longer entitled to probable cause hearing); cf. Conn. Const., art. I, § 8, as amended by articles seventeen and twenty-nine of the amendments ("[n]o person shall be held to answer for any crime, punishable by death or life imprisonment, unless upon probable cause shown at a hearing"); General Statutes § 54-46a (probable cause hearing required for crimes punishable by death, life imprisonment without the possibility of release or life imprisonment). She argues, nonetheless, that the court improperly rejected her request for such a hearing on the ground that "[i]t's not the practice in Connecticut" and erred in assuming that a determination of probable cause had been made by another judge in the present case.

We note that the claims raised on appeal were not made before the trial court. Additionally, the defendant's appellate brief fails to point us to any precedent supporting her claim that the trial court should have afforded her a probable cause hearing. The bald assertion that the court's ruling constituted an abuse of discretion or violated her right to due process is unsupported by any discussion of or citation to persuasive legal authority. See *State* v. *Riggsbee*, 112 Conn. App. 787, 793, 963 A.2d 1122 (2009). Put differently, "[i]t is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones." (Internal quotation marks omitted.) *State* v. *Prosper*, 160 Conn. App. 61, 74–75, 125 A.3d 219 (2015). For these reasons, we conclude that the defendant's claim that the court should have held a probable cause hearing is without merit.[14]

### III

The defendant next claims that she was arrested in her home without a warrant and as a result of this illegal arrest, her subsequent prosecution for and conviction of breach of the peace in the second degree violated various provisions of the federal and state constitutions.[15] The state counters that, under the facts and circumstances of this case, even if her arrest was illegal, such illegality does not serve as the basis for the dismissal of the information. We agree with the state.

The defendant raised the issue of the illegality of her arrest at a pretrial proceeding on June 11, 2014, in her oral motion to dismiss on January 11, 2016, and in her motion to dismiss and for a judgment of acquittal on January 14, 2016. On appeal she contends that the planned and warrantless arrest in her home, absent exigent circumstances, was illegal and unconstitutional. See, e.g., *State* v. *Santiago*, 224 Conn. 494, 498–99, 619 A.2d 1132 (1993) ("[e]ven where there is probable cause to arrest a suspect on the speedy information of others, however, the fourth amendment prohibits the police from making a warrantless . . . entry into a suspect's home in order to make a routine . . . misdemeanor arrest" [internal quotation marks omitted]).

Our Supreme Court has recognized that "[t]he relationship between an illegal arrest and a subsequent prosecution under federal constitutional law is well settled. In an unbroken line of cases dating back to 1886, the federal rule has been that an illegal arrest will not bar a subsequent prosecution or void a resulting conviction." *State* v. *Fleming*, 198 Conn. 255, 259, 502 A.2d 886, cert. denied, 475 U.S. 1143, 106 S. Ct. 1797, 90 L. Ed. 2d 342 (1986); see also *State* v. *Heinz*, 193 Conn. 612, 629, 480 A.2d 452 (1984) (under federal law, fact that person has been illegally arrested or detained does not void subsequent conviction); *State* v. *Haskins*, 188 Conn. 432, 442–43, 450 A.2d 828 (1982) (fact that person was subject to illegal arrest or detention will not void subsequent conviction); *State* v. *Silano*, 96 Conn. App. 341, 344, 900 A.2d 540 (conviction not void if no evidence obtained as result of illegal arrest), cert. denied, 280 Conn. 911, 908 A.2d 542 (2006). Mindful of this controlling precedent, we conclude that the defendant's claim of an illegal arrest warrants neither a dismissal of the information nor a voiding of her conviction.

IV

The defendant next claims that the court deprived her of the right to present a defense, as well as her rights to due process and a fair trial, by preventing her from calling certain witnesses and presenting evidence regarding her dismissal from the authority. Specifically, the defendant argues that the court precluded the examination of Claudia Sweeney, the executive director of the authority, and prohibited, inter alia, the admission into evidence of complaints that the defendant had filed against the authority and grievances filed against Silano. The state counters that the court properly determined that the evidence sought by the defendant either was irrelevant or constituted inadmissible hearsay. We agree with the state.

The following additional facts are necessary for our discussion. The defendant's revised witness list, dated January 11, 2016, contained twenty-seven persons,

including Senator Richard Blumenthal, Senator Christopher S. Murphy, Governor Dannel P. Malloy, Attorney General George Jepsen, three mayors of Torrington, and Sweeney. Prior to the start of the trial, the court expressed its concern that many of the individuals on the revised witness list would not be able to provide testimony relevant to the criminal case. Following the conclusion of the state's case, the court addressed the defendant's revised witness list, stating: "I don't see how anything from the [authority] is relevant here. This is not about the [authority] at all. . . . I know at one time you indicated that there was going to be some type of connection between this arrest and her previous experience with the [authority]. I did not hear anything that connected it to this arrest. To me, this was an incident that was initiated completely on the part of [the defendant] toward Mr. Silano. And it may be that in her mind Mr. Silano was related, but there was nothing that connected him and his actions that day to the [authority]. Again, the only thing that connected him is that's how he knew—so, the records of the [authority], anything involving [the defendant's] termination from that job, I do not see how that's relevant at all here." After hearing further argument from both the defendant and defense counsel, the court iterated that the defendant's prior termination and actions of the authority "have absolutely nothing to do with this incident, and so that is the reason why I've limited what we're doing here . . . that this case isn't about your experience with the [authority]."

The court permitted the defendant to call Sweeney as a witness.[16] Sweeney, in her position as the executive director of the authority, terminated the defendant's employment in 2006. Sweeney admitted that in 2012, approximately six years after terminating the defendant's employment, she sent the defendant a letter, warning her that if she continued engaging in certain behavior, she could be arrested. She also testified that she had learned of the defendant's arrest from Silano the day after it had occurred. Sweeney denied, however, telling Silano that she wanted the defendant arrested.[17]

On appeal, the defendant argues that the court improperly precluded most of her witnesses from testifying[18] and prohibited her from presenting evidence in support of her contention that the authority had terminated her employment and threatened her with arrest because she had alleged corruption in the authority. Put differently, the court erred, according to the defendant, by refusing "to allow testimony or evidence about her whistle-blowing complaints to be admitted, saying it was not going to 'relitigate' the defendant's firing." The defendant maintains that such evidence would have undermined the credibility of the state's witnesses and proved retaliation, motivation, bias, prior misconduct and political motivation for her arrest.

"It is well established that [t]he federal constitution require[s] that criminal defendants be afforded a meaningful opportunity to present a complete defense. . . . The sixth amendment . . . [guarantees] the right to offer the testimony of witnesses, and to compel their attendance, if necessary, [and] is in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury so that it may decide where the truth lies. . . . When defense evidence is excluded, such exclusion may give rise to a claim of denial of the right to present a defense. . . .

"The sixth amendment to the [United States] constitution guarantees the right of an accused in a criminal prosecution to confront the witnesses against him. . . . The primary interest secured by confrontation is the right to cross-examination . . . and an important function of cross-examination is the exposure of a witness' motivation in testifying. . . . Cross-examination to elicit facts tending to show motive, interest, bias and prejudice is a matter of right and may not be unduly restricted. . . .

"Impeachment of a witness for motive, bias and interest may also be accomplished by the introduction of extrinsic evidence. . . . The same rule that applies to the right to cross-examine applies with respect to extrinsic evidence to show motive, bias and interest; proof of the main facts is a matter of right, but the extent of the proof of details lies in the court's discretion. . . . The right of confrontation is preserved if defense counsel is permitted to expose to the jury the facts from which jurors, as the sole triers of fact and credibility, could appropriately draw inferences relating to the reliability of the witness. . . .

"Although it is within the trial court's discretion to determine the extent of cross-examination and the admissibility of evidence, the preclusion of sufficient inquiry into a particular matter tending to show motive, bias and interest may result in a violation of the constitutional requirements [of the confrontation clause] of the sixth amendment. . . . Further, the exclusion of defense evidence may deprive the defendant of his constitutional right to present a defense. . . .

"[*T*]*he confrontation clause does not* [*however*] *suspend the rules of evidence to give the defendant the right to engage in unrestricted cross-examination.* . . . *Rather,* [*a*] *defendant is* . . . *bound by the rules of evidence in presenting a defense.* . . . Although exclusionary rules of evidence cannot be applied mechanistically to deprive a defendant of his rights, the [federal] constitution does not require that a defendant be permitted to present every piece of evidence he wishes. . . . To the contrary, [t]he [c]onfrontation [c]lause guarantees only an opportunity for effective cross-

examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish. . . . *Thus, [i]f the proffered evidence is not relevant [or constitutes inadmissible hearsay], the defendant's right to confrontation is not affected, and the evidence was properly excluded.*" (Citation omitted; emphasis added; internal quotation marks omitted.) *State* v. *Baltas*, 311 Conn. 786, 798–99, 91 A.3d 384 (2014); see also *State* v. *Bennett*, 324 Conn. 744, 760, 155 A.3d 188 (2017).

Distilled to its essence, the defendant's argument appears to be that she made complaints regarding the authority, which then retaliated against her by terminating her employment. The authority allegedly responded to the defendant's continuing crusade with threats of arrest, which eventually were acted on following her incident with Silano. The trial court, however, declined to allow such evidence on the ground that it would not "relitigate" the termination of the defendant's employment with the authority.[19]

"Relevant evidence means evidence having any tendency to make the existence of the fact that is material to the determination of the proceeding more probable or less probable than it would be without the evidence. Conn. Code Evid. § 4-1. Relevant evidence is evidence that has a logical tendency to aid the trier in the determination of an issue. . . . One fact is relevant to another if in the common course of events the existence of one, alone or with other facts, renders the existence of the other either more certain or more probable. . . . *Evidence is irrelevant or too remote if there is such a want of open and visible connection between the evidentiary and principal facts that, all things considered, the former is not worthy or safe to be admitted in the proof of the latter.* . . . The trial court has wide discretion to determine the relevancy of evidence and [e]very reasonable presumption should be made in favor of the correctness of the court's ruling in determining whether there has been an abuse of discretion. . . . [A]buse of discretion exists when a court could have chosen different alternatives but has decided the matter so arbitrarily as to vitiate logic, or has decided it based on improper or irrelevant factors." (Emphasis added; internal quotation marks omitted.) *State* v. *Halili*, 175 Conn. App. 838, 862–63, 168 A.3d 565, cert. denied, 327 Conn. 961, 172 A.3d 1261 (2017); see also *State* v. *Lewis*, 146 Conn. App. 589, 602, 79 A.3d 102 (2013), cert. denied, 311 Conn. 904, 83 A.3d 605 (2014).

The defendant failed to proffer evidence connecting Silano to the alleged retaliatory acts of the authority. There was no evidence presented that Silano had been directed by Sweeney, or anyone else associated with the authority, to pursue his criminal complaint against the defendant. Silano testified that the decision to call the police following his interactions with the defendant

of May 16, 2013, was based on his concern for his family, particularly his grandchildren. Additionally, there was no evidence that Silano had been directed by his employer to speak with the police as retaliation for the defendant's complaints against the authority. Absent such a connection, the court did not abuse its discretion in ruling that the evidence offered by the defendant was irrelevant, and thus inadmissible. See *Spearman* v. *Commissioner of Correction*, 164 Conn. App. 530, 577, 138 A.3d 378, cert. denied, 321 Conn. 923, 138 A.3d 284 (2016). As a result, we also conclude that the defendant's constitutional right to present a defense was not violated.

V

The defendant finally claims that the court improperly failed to recuse itself for bias. Specifically, she argues that, over the course of the proceedings, the court's preclusion of witnesses and evidence demonstrated a bias against the defendant that amounted to structural error, necessitating the reversal of her conviction and the granting of a new trial. Acknowledging that she failed to move to disqualify the trial judge or to seek a mistrial, the defendant now attempts to prevail on this claim pursuant to the plain error doctrine.[20] The state counters that the claim of bias in this case constitutes nothing more than disagreement with the court's adverse rulings, and therefore fails to constitute judicial bias or plain error. We agree with the state.

During the proceedings, the court concluded that evidence of the defendant's termination by the authority was irrelevant to the proceedings. The defendant now argues that these rulings demonstrated judicial bias. As a result, she contends that such rulings "[give] rise to a reasonable appearance of impropriety such that the judge's failure to recuse himself amounted to structural error . . . ."

We recently have stated that "[o]ur Supreme Court has criticized the practice whereby an attorney, cognizant of circumstances giving rise to an objection before or during trial, waits until after an unfavorable judgment to raise the issue. We have made it clear that we will not permit parties to anticipate a favorable decision, reserving a right to impeach it or set it aside if it happens to be against them, for a cause which was well known to them before or during the trial. . . . Nevertheless, [b]ecause an accusation of judicial bias or prejudice strikes at the very core of judicial integrity and tends to undermine public confidence in the established judiciary, this court has reviewed unpreserved judicial bias claims under the plain error doctrine. . . . Plain error exists only in truly extraordinary situations where the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings." (Citations omitted; internal quotation marks omitted.) *Baronio* v. *Stubbs*, 178 Conn.

App. 769, 778–79,    A.3d    (2017); see also *State v. James R.*, 138 Conn. App. 181, 202, 50 A.3d 936 (same), cert. denied, 307 Conn. 940, 56 A.3d 949 (2012); *State v. McDuffie*, 51 Conn. App. 210, 216, 721 A.2d 142 (1998) (absent plain error, claim of judicial bias must be preserved for appellate review through motion for disqualification or motion for mistrial), cert. denied, 247 Conn. 958, 723 A.2d 814 (1999).

"In reviewing a claim of judicial bias, this court employs a plain error standard of review. . . . The standard to be employed is an objective one, not the judge's subjective view as to whether he or she can be fair and impartial in hearing the case. . . . Any conduct that would lead a reasonable [person] knowing all the circumstances to the conclusion that the judge's impartiality might reasonably be questioned is a basis for the judge's disqualification." (Internal quotation marks omitted.) *State v. Carlos C.*, 165 Conn. App. 195, 207, 138 A.3d 1090, cert. denied, 322 Conn. 906, 140 A.3d 977 (2016); *State v. Crespo*, 145 Conn. App. 547, 577, 76 A.3d 664 (2013), aff'd, 317 Conn. 1, 115 A.3d 447 (2015). After reviewing the record and arguments set forth in the defendant's appellate brief, we conclude that her claims of judicial bias do not constitute plain error. Her claims amount to disagreements with the court's rulings. Adverse rulings, however, are not evidence of bias. *Emerick v. Glastonbury*, 177 Conn. App. 701, 739, 173 A.3d 28 (2017), cert. denied, 327 Conn. 994, 175 A.3d 1245 (2018). Accordingly, we reject the defendant's claim of plain error in this case.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] At the time of trial, Silano had been in a long-term relationship and resided with Paula Dante. Silano and Dante were not married, but he considered Rich, Dante's daughter, and Rich's two children to be his "daughter" and "grandchildren," respectively.

[2] The terms of probation included an order that the defendant initiate no contact with Silano or Rich.

[3] "We begin with this issue because if the defendant prevails on the sufficiency claim, she is entitled to a directed judgment of acquittal rather than to a new trial." *State v. Moore*, 100 Conn. App. 122, 126 n.2, 917 A.2d 564 (2007).

[4] "Fighting words consist of speech that has a direct tendency to cause imminent acts of violence or an immediate breach of the peace. Such speech must be of such a nature that it is likely to provoke the average person to retaliation." (Internal quotation marks omitted.) *State v. Buhl*, 321 Conn. 688, 717 n.23, 138 A.3d 868 (2016); see also *State v. Parnoff*, 160 Conn. App. 270, 278, 125 A.3d 573 (2015), cert. granted on other grounds, 320 Conn. 901, 127 A.3d 185 (2015).

[5] Specifically, the defendant's motion requested that the state set forth: "1. The specific nature of the offense or offenses which the Defendant is charged with. 2. The time, place and manner in which this offense was committed. 3. The specific acts performed by the Defendant which constitutes all necessary elements of the crime charged. 4. The general circumstances surrounding the alleged crime. 5. State with particularity, the date, and time of said alleged violations and the section of the Connecticut General Statutes violated. 6. State with particularity, the name or names, including addresses, of all persons the State alleges were involved in said violations."

[6] Specifically, the court stated: "All right. Well, I'm going to deny the motion at this time. I will [say] this, that's why we have jury trials. I will also indicate that based on—assuming the facts as presented in the motion,

which, I understand, is based on the police report and may not be accurate, but based on what the police have indicated, and what counsel has put in their motion, I believe there is sufficient evidence to go forward, and I deny the defense's motion to dismiss."

[7] See Practice Book § 41-8 (5).

[8] Specifically, defense counsel argued: "Your Honor, first of all, I believe that—and I submit to the court that the evidence that is pertinent to this charge is solely the evidence involving the events that took place at or near 260 Crestwood Road in Torrington, and that is the residence of Mr. Silano. So that any conduct that took place elsewhere is not being charged in this count one. And so what happened, according to the evidence that we have from State, is that at or near 260 Crestwood Road in Torrington, [the defendant] allegedly stopped her car in the middle of the street at the drive, or near the driveway of 260 Crestwood Road, and yelled profanities at Mr. Silano, and demanded an investigation and told him to call the cops. And that's basically all that [the defendant] is alleged to have done."

[9] As a result of this conclusion, we need not consider the defendant's request to incorporate the arguments set forth in *State* v. *Parnoff*, supra, 160 Conn. App. 270. In *Parnoff*, the dispositive issue was whether the defendant's statements to a summer intern and an employee of a water utility company who had entered his property rose to the level "fighting words." Id., 272–74. Unlike the present case, *Parnoff* concerned speech and not physical conduct.

[10] In *State* v. *Simmons*, 86 Conn. App. 381, 391, 861 A.2d 537 (2004), cert. denied, 273 Conn. 923, 871 A.2d 1033, cert. denied, 546 U.S. 822, 126 S. Ct. 356, 163 L. Ed. 2d 64 (2005), we stated: "It is clear that the only difference between [breach of the peace and disorderly conduct] is that the breach of the peace statute requires that the proscribed conduct occur in a public place. The disorderly conduct statute does not require proof of any fact not also required for conviction under the breach of the peace statute." See also *State* v. *Szymkiewicz*, 237 Conn. 613, 618, 678 A.2d 473 (1996).

[11] Silano's written statement to the police regarding the incident, which was admitted into evidence, indicated that he was "extremely alarmed for me, my family, and other housing authority employees' safety."

[12] In addition to the evidence presented during the trial, the prosecutor, in his closing argument, addressed the defendant's conduct toward Silano at the frozen yogurt shop and described the events of May 16, 2013, as a "continuing course of conduct that starts at the yogurt store and goes all the way [through the events at the Silano residence]."

[13] As noted in the state's brief, the defendant did not specifically argue that she was entitled to a hearing pursuant to Practice Book § 37-12. Section 37-12 (a) provides in relevant part that "[i]f a defendant has been arrested without a warrant and has not been released from custody by the time of the arraignment or is not released at the arraignment . . . the judicial authority shall . . . make an independent determination as to whether there is probable cause for believing that the offense charged has been committed by the defendant." The state further properly notes that the defendant had been released from custody prior to her first court appearance, and therefore that rule of practice did not apply in this case.

[14] We further note our Supreme Court "has required the automatic reversal of a conviction due to error at the probable cause hearing only when the error was a lack of sufficient evidence to justify the finding of probable cause." *State* v. *Brown*, 279 Conn. 493, 508, 903 A.2d 169 (2006). Otherwise, errors at the probable cause stage are subject to the harmless error analysis on appeal. Id., 509.

[15] Specifically, she argues that her prosecution and conviction following the illegal arrest violated her rights to due process and a fair trial in violation of the fourth, fifth and fourteenth amendments to the United States constitution, as well as article first of the Connecticut constitution.

[16] The court also permitted the defendant to call Michael Maniago, the Torrington chief of police, as a witness.

[17] During cross-examination, Sweeney expressly stated that she did not speak with Silano on May 16, 2013, regarding the defendant and never told Silano that he had to file a "complaint" against the defendant.

[18] The state correctly contends that the defendant inadequately briefed the issue of whether the court improperly had precluded the majority of the witnesses listed on her revised witness list from testifying. As succinctly noted in its brief, the state asserts that the defendant "has failed to specify which of the numerous witnesses proffered to the court were improperly excluded. . . . Here, the only one of the proffered witnesses mentioned in the defendant's brief is . . . Sweeney, whom the trial court permitted to

testify. . . . The defendant appears to claim that the trial court improperly limited the scope of Sweeney's testimony. . . . The defendant does not address any of these proffered witnesses with any particularity . . . ." (Citations omitted.)

[19] For example, the defendant points us to the following statement from the trial court: "All right. Here's my ruling in regard to this. And we talked about this at the beginning of this trial, and I'm going to say it again . . . . But we are not relitigating a proper or improper firing of [the defendant]. As I indicated before, there are avenues available to [the defendant] to challenge an illegal firing, improper firing, a firing that she alleges is based upon her being a 'whistle-blower.' There is a legal forum for airing those kinds of issues. This case is not that forum.

"So, the fact that [the defendant] had made numerous, or the nature of those complaints against the [authority] are not relevant in this case. The— so, the fact that . . . Sweeney fired [the defendant], that fact, that [the defendant] complained of corruption, the fact that [the defendant] filed a complaint resulting in a settlement, those are just—they're not relevant to this case."

[20] See Practice Book § 60-5.

---