******************************************

The ''officially released'' date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the ''officially released'' date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

STATE OF CONNECTICUT *v.* ALFRED P. MAYO
(AC 41562)

Lavine, Prescott and Bishop, Js.

*Syllabus*

Convicted of the crime of breach of the peace in the second degree in connection with an encounter with S, the mayor of New Britain, the defendant appealed to this court, claiming that the evidence was insufficient to support his conviction. S had been hosting an event for children in a public park when the defendant arrived on a bicycle that had a political campaign sign affixed to it and began passing out business cards to children. When an aide to S asked the defendant to leave because his presence was inappropriate and a safety issue for the children, the defendant screamed profanities. Thereafter, when S approached the defendant and asked him to stop yelling profanities, he grabbed her wrist, threw her arm down abruptly and shouted profanities at her. *Held* that the evidence was sufficient to support the defendant's conviction of breach of the peace in the second degree in violation of statute (§ 53a-181 (a) (1)), as his conduct and use of profanities occurred in a public place and constituted fighting, or violent, tumultuous or threatening behavior; the evidence was sufficient for the jury to determine that the defendant acted with the requisite intent required by § 53a-181 (a) (1), and the jury was free to consider that the defendant intended the harm to S as a natural result of his physical actions toward her.

Argued March 16—officially released July 21, 2020

*Procedural History*

Substitute information charging the defendant with the crimes of assault in the third degree and breach of the peace in the second degree, brought to the Superior Court in the judicial district of New Britain, geographical area number fifteen, and tried to the jury before *Graham, J.*; verdict and judgment of guilty of breach of the peace in the second degree, from which the defendant appealed to this court. *Affirmed.*

*Peter G. Billings*, assigned counsel, for the appellant (defendant).

*Denise B. Smoker*, senior assistant state's attorney, with whom, on the brief, was *Brian Preleski*, state's attorney, for the appellee (state).

*Opinion*

PER CURIAM. The defendant, Alfred P. Mayo, appeals from the judgment of conviction, rendered after a jury trial, of breach of the peace in the second degree in violation of General Statutes § 53a-181 (a) (1). On appeal, the defendant claims that there was insufficient evidence adduced at trial to support his conviction. We affirm the judgment of conviction.

The jury reasonably could have found the following facts. On July 30, 2015, the mayor of New Britain, Erin Stewart, hosted the annual Pencil Hunt (event) at Walnut Hill Park, a public park in New Britain. Counselors from Camp TotalRec[1] hid candy and pencils for the participating children in a section of the park reserved for the event. As the host, Stewart was in attendance.

Shortly before the event was to begin, the defendant arrived at the park with a political campaign sign affixed to the back of his bicycle. The defendant then climbed off his bicycle and passed out business cards to the children at the event. This made several adults at the event uncomfortable, including Stewart; Matthew Schofield, the recreation services coordinator for the New Britain Parks and Recreation Department; and Justin Dorsey, Stewart's deputy chief of staff. Dorsey approached the defendant and asked him to leave because his presence was "inappropriate" and a "safety issue" for the children. In response, the defendant screamed profanities at Dorsey, yelling, "[i]t's a fucking park . . . ."

Thereafter, Stewart approached the defendant and advised him that the children were listening and that it was inappropriate to be yelling such profanities. She requested that he "please stop" and leave before she called the police. The defendant then grabbed Stewart's wrist and threw her arm down, leaving a red mark on her wrist and causing her pain. Stewart backed away from the defendant and informed him that the police would be called. The defendant continued to shout profanities, calling Stewart a "[fucking] racist" and yelling that she "[didn't] know what the [fuck she was] talking about."

As a result of the defendant's physical contact, Stewart went to see Elaine Jeffrey, the public health nurse for the city. Stewart told Jeffrey that "she was grabbed by a political opponent and that as soon as she was grabbed she felt the pain." Jeffrey examined Stewart and advised her that, if the pain worsened, she should consult her doctor or visit an emergency department.

The defendant subsequently was charged with assault in the third degree in violation of General Statutes § 53a-61 (a) (1) and breach of the peace in the second degree in violation of § 53a-181 (a) (1). Following a trial, the jury found the defendant guilty of breach of the peace in the second degree and not guilty of assault. The court

rendered judgment in accordance with the jury's verdict and sentenced the defendant to six months of incarceration. This appeal followed. Additional facts will be set forth as necessary.

The defendant claims that there was insufficient evidence to support his conviction of breach of the peace in the second degree. Specifically, the defendant claims that the state failed to prove beyond a reasonable doubt that his conduct rose "to the level of physical fighting, or physically violent, threatening or tumultuous behavior."[2] The state counters that the evidence that the defendant grabbed Stewart's wrist and threw it down with such force that it left a mark and caused her pain constituted sufficient evidence for the jury to conclude that the defendant engaged in fighting, violent, threatening or tumultuous behavior. We agree.

We first set forth our well established standard of review. "In reviewing the sufficiency of the evidence to support a criminal conviction we apply a two-part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [finder of fact] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . .

"We note that the jury must find every element proven beyond a reasonable doubt in order to find the defendant guilty of the charged offense, [but] each of the basic and inferred facts underlying those conclusions need not be proved beyond a reasonable doubt. . . . If it is reasonable and logical for the jury to conclude that a basic fact or an inferred fact is true, the jury is permitted to consider the fact proven and may consider it in combination with other proven facts in determining whether the cumulative effect of all the evidence proves the defendant guilty of all the elements of the crime charged beyond a reasonable doubt. . . .

"Moreover, it does not diminish the probative force of the evidence that it consists, in whole or in part, of evidence that is circumstantial rather than direct. . . . It is not one fact, but the cumulative impact of a multitude of facts which establishes guilt in a case involving substantial circumstantial evidence. . . . In evaluating evidence, the [finder] of fact is not required to accept as dispositive those inferences that are consistent with the defendant's innocence. . . . The [finder of fact] may draw whatever inferences from the evidence or facts established by the evidence it deems to be reasonable and logical. . . .

"Finally, [a]s we have often noted, proof beyond a reasonable doubt does not mean proof beyond all possible doubt . . . nor does proof beyond a reasonable doubt require acceptance of every hypothesis of

innocence posed by the defendant that, had it been found credible by the [finder of fact], would have resulted in an acquittal. . . . On appeal, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the [finder of fact's] verdict of guilty." (Internal quotation marks omitted.) *State* v. *Bagnaschi*, 180 Conn. App. 835, 840–42, 184 A.3d 1234, cert. denied, 329 Conn. 912, 186 A.3d 1170 (2018).

To convict the defendant of breach of the peace in the second degree in violation of § 53a-181 (a) (1), the state must prove beyond a reasonable doubt that "(1) the defendant engaged in fighting or in violent, tumultuous or threatening behavior, (2) that this conduct occurred in a public place and (3) that the defendant acted with the intent to cause inconvenience, annoyance or alarm, or that he recklessly created a risk thereof." *State* v. *Simmons*, 86 Conn. App. 381, 386–87, 861 A.2d 537 (2004), cert. denied, 273 Conn. 923, 871 A.2d 1033, cert. denied, 546 U.S. 822, 126 S. Ct. 356, 163 L. Ed. 2d 64 (2005). "[T]he predominant intent [in a breach of the peace charge] is to cause what a reasonable person operating under contemporary community standards would consider a disturbance to or impediment of a lawful activity, a deep feeling of vexation or provocation, or a feeling of anxiety prompted by threatened danger or harm." *State* v. *Wolff*, 237 Conn. 633, 670, 678 A.2d 1369 (1996).

In the present case, the evidence was sufficient for the jury to conclude that the defendant's conduct occurred in a public place and that it constituted fighting, violent, tumultuous or threatening behavior. The evidence was sufficient, as well, for the jury to determine that the defendant acted with the requisite intent required by § 53a-181 (a) (1). During trial, the state presented evidence that the defendant engaged in physical conduct, which was accompanied by the use of profanities. Specifically, the state presented the testimony of Stewart, who stated that she was present in a public park when accosted by the defendant and that after she had asked the defendant to leave the event, he grabbed her wrist and threw her arm down "abruptly." The defendant's physical actions caused a red mark on Stewart's arm and enough pain that she sought medical attention. The jury was free to consider that the defendant intended this harm as a natural result of his conduct. See *State* v. *Dijmarescu*, 182 Conn. App. 135, 154, 189 A.3d 111, cert. denied, 329 Conn. 912, 186 A.3d 707 (2018).

In sum, there was overwhelming evidence that the defendant's behavior was sufficient for the jury reasonably to have found that the defendant engaged in violent, tumultuous or threatening behavior in a public place. Therefore, we conclude that the state satisfied

its burden of proving beyond a reasonable doubt that the defendant committed breach of the peace in the second degree.

The judgment is affirmed.

[1] Camp TotalRec is a summer day camp for students in elementary and middle school.

[2] In his brief, the defendant also claims that the alleged profanities and verbal language cannot serve as the basis of the alleged crime, as it would violate the first amendment to the United States constitution. He claims further that the court failed to instruct the jury on fighting words. The defendant's claims are unpersuasive because his speech was part of his conduct. See *State* v. *Szymkiewicz*, 237 Conn. 613, 620, 678 A.2d 473 (1996) ("speech can be proscribed not only when accompanied by actual physical conduct, but also when it can be identified as fighting words"); see also *State* v. *Andriulaitis*, 169 Conn. App. 286, 299, 150 A.3d 720 (2016) (this court concluded that "we need not decide whether the defendant's language portended physical violence or amounted to fighting words because the defendant's conduct consisted of more than mere speech"). Therefore, because the defendant's speech in the present case was accompanied by physical contact, we do not consider the defendant's claim that his verbal language cannot serve as the basis of the alleged crime because it violates the first amendment to the federal constitution.